MICHAEL BARON, RESPONDENT, v. WALTER WISNOWSKI ET AL., APPELLANTS.

Submitted May 15, 1925—Decided October 1, 1925.

In the amendment of 1918 (*Pamph. L., p.* 1020) to section 10 of the statute of frauds, relating to commissions of real estate brokers, the words "actually effect the sale" and "actual sale," in the first proviso, connote something beyond merely introducing a purchaser able, ready and willing to buy on the terms fixed by the seller; to entitle the broker to commission under that proviso, there must have been a conveyance to his client, or at least a binding contract of sale with him.

---

On appeal from the Essex County Circuit Court.

Before Justices PARKER, MINTURN and BLACK.

For the appellants, *James LeRoy Lafferty.*

For the respondents, *Cohen & Klein.*

The opinion of the court was delivered by

PARKER, J. This is a suit by a real estate broker to recover commissions under the act of 1918 (*Pamph. L., p.* 1020, *ch.* 273), amending the tenth section of the statute of frauds. *Comp. Stat., p.* 2617. There was no previous written authority as required by that section in its original form, nor was there any subsequent written recognition of such authority as provided by the amendment of 1911, page 703 (*Supp. Comp. Stat., p.* 747), and, consequently, the plaintiff was driven to rely on a notice served, as he claimed, in conformity with the amendment of 1918, *supra.* Plaintiff had a verdict and judgment for the amount of his claim.

In disposing of this appeal we find it unnecessary to consider the rulings on evidence assigned for error, because we conclude that there was error calling for a reversal in the court's refusal to nonsuit or to direct a verdict for defendant.

The sole question involved was a correct construction of the amendment of 1918. Under section 10, as then amended, there are four stated situations in which the broker may recover his commission:

1. The original statute—previous written authority specifying the rate (or amount) of commission, and procurement of a "sale" by the broker. The meaning of the word "sale," under this statute, is well settled; the latest case in our court of last resort, gathering up earlier decisions, is probably *Resky* v. *Meyer,* 98 *N. J. L.* 168, especialy at pages 172, 173.

2. He may also recover in case of a written and signed recognition stating the commission, and made after the "sale," as provided in the act of 1911. *supra,* which was probably passed in view of such cases as *Stout* v. *Humphrey,* 69 *N. J. L.* 436. Three and four are the cases brought in by the proviso-amendments of 1918. These are too long to quote here in full, and are therefore epitomized.

3. The first proviso is that any broker (a) employed by oral agreement to sell or exchange (b) and who shall *actually effect* the sale or exchange pursuant to such agreement (c) before the same has been terminated in writing by the owner, as later provided, (d) and shall have served on the owner within five days after the oral agreement a written notice stating its terms and the rate of commission—shall be entitled to recover if the owner has not repudiated or terminated the agreement prior to the *actual sale or exchange* of the real estate. Then follow provisions about repudiation or termination by the owner, not material here.

4. The second proviso is that if, pursuant to an oral agreement, the broker has, in good faith, entered into negotiations with a prospective purchaser, and such negotiations shall be pending at the time of repudiation or termination by the owner, and such sale or exchange is "subsequently *consummated* between such owner *and such customer*," the broker shall be entitled. to recover notwithstanding the repudiation of the agreement. This is, in effect, an exception to the "terminating" right of the owner established by No. 3.

In the case at bar there was no written authority by the owners at any time, and, consequently, there could be no recovery unless the case is brought within the provisos of 1918. And plaintiff's case was rested upon evidence of an oral contract, and service of a notice of its terms and the rate of commission. Such evidence tended to show that the oral contract was made on November 23d, and the notice was served on the 26th, within the five days. No question is raised as to the sufficiency of the notice. The oral contract contemplated a meeting of defendants with plaintiff's intending purchaser on the evening of the 24th, at which time written contract between vendors and purchaser was to be executed. This appointment defendants failed to keep, having earlier in the day sold to another purchaser.

The trial judge, in denying motions to nonsuit and to direct a verdict for defendant, held that under the amendment of 1918, "if there was a contract" (of course, meaning an oral contract) "with the broker to pay a commission of $800 for the sale of this property for $24,500, and if, before that con-

tract was repudiated or revoked, the broker produced a customer who was ready, willing and able to consummate such a contract, the broker, upon those findings of fact, would be entitled to his commission." In so holding he must necessarily have given to the word "sale," as used in the provisos of 1918, the broad and liberal meaning placed on the same word in the original section 10 as enacted in 1873. To this construction we cannot agree, because a careful reading of the provisos of 1918 should make it plain that the word "sale" is there so qualified as to mean something more than the mere bringing of vendor and purchaser together on price, terms and ability to perform. The first proviso speaks of a broker who shall *actually effect the sale,* and of repudiation or termination prior to the *actual sale* or exchange; that the employment may be repudiated or terminated at any time after notice by an owner served on the broker prior to the actual sale by such agent. We consider that by this repeated use of the word "actual," as applied to "sale," the legislature intended to limit the right of recovery on an oral contract to cases where the vendor either conveyed to the broker's client, or at most to cases in which a valid and binding contract of sale was entered into between vendor and the purchaser brought in by the broker. This construction, while not specifically enunciated in *Noonan* v. *Henry,* 97 *N. J. L.* 447, was necessary to that decision, because in that case the broker, if he had been employed under written authority, would have earned his commission. Our view is fortified, we think, by the second proviso, which, as we have said, is in effect, an exception to the first, and protects the broker even after repudiation or termination, in a case where negotiations are pending between vendor and his client, and the "sale or exchange is subsequently consummated between such owner and such customer."

In the present case the broker did not become entitled to commission under either of the two provisos as we understand their meaning. He did not "actually effect a sale" before repudiation, which, in this case, was a sale to another; nor did the owner after repudiation, sell to his client.

It is suggested that there was an "actual sale" to plaintiff's client because the latter took over the contract made by defendant with the other party, though he did not carry it out and abandoned it. But the owner was not responsible for anything that this other purchaser may have done by way of selling or assigning his contract. *Resky* v *Meyer, supra.*

The judgment will be reversed to the end that a *venire de novo* issue.